1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SILVESTRE P. BAUTISTA,

           Plaintiff,

         v.

BNSF RAILWAY COMPANY, UNION
PACIFIC RAILROAD COMPANY, an
LONGVIEW SWITCHING COMPANY,

          Defendants.

Case No.  C08-05732RJB

ORDER ON
1. DEFENDANT BNSF
RAILWAY COMPANY'S
MOTION FOR SUMMARY
JUDGMENT,
2. DEFENDANT UNION
PACIFIC RAILROAD
COMPANY'S MOTION FOR
SUMMARY JUDGMENT, and
3. DEFENDANT LONGVIEW
SWITCHING COMPANY'S
MOTION FOR SUMMARY
JUDGMENT

      This matter comes before the court on (1) Defendant BNSF Railway Company's Motion

for Summary Judgment (Dkt. 39), (2) Defendant Union Pacific Railroad Company's Motion for

Summary Judgment (Dkt. 36), and (3) Defendant Longview Switching Company's Motion for

Summary Judgment (Dkt. 41).  The court has considered the pleadings filed in support of and in

opposition to the motion and the remainder of the file herein.

<u>BACKGROUND</u>

      On December 8, 2008, plaintiff Sylvester Bautista filed his complaint against defendants

Burlington Northern Santa Fe Railway Company ("BNSF"), Union Pacific Railroad Company

("Union Pacific"), and Longview Switching Company ("LSC").  Dkt. 1.  The plaintiff brings this action against the defendants, who the plaintiff asserts are his joint employers, pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination based on race and retaliation for "exercising rights to be free from illegal race discrimination."  *Id.*  He alleges that the defendants engaged in a pattern and practice of creating and maintaining a discriminatory work environment, that the defendants retaliated against him because of his complaint against a co-worker who made racist and sexist comment, and that the defendants terminated his employment because of his race.  *Id.*

The defendants claim that they did not discriminate against the plaintiff or retaliate against him.  Dkt. 36, 39, & 41.  The defendants further contend that they treated the plaintiff far better than was required by law.  *Id.*

### Complaint of Racism and Sexism against Co-Worker

The plaintiff was born in Mexico of Mexican parents and is of Latino heritage.  Dkt. 47. His first language is Spanish.  *Id.*  The plaintiff alleges that during his employment he "endured a steady background noise of racist comments by and among his co-workers, which he overheard at least 2-3 times per month."  *Id.*  The plaintiff asserts that his co-workers commonly referred to "lazy Mexicans," "lazy fucking Mexicans," or "stupid Mexicans" in the workplace.  *Id.*

The plaintiff claims that he has been employed by the defendants since 1992.  *Id.*  He was employed as a locomotive engineer at LSC and he alleges that he was the only Latino employee at his worksite.  *Id.*  In January 2003, the plaintiff and eight of his co-workers complained to corporate officers about racist and sexist comments made by a co-worker.  Dkt. 1; Dkt. 36, 39, & 41.  As a result, an LSC supervisor spoke with the employee complained of and held sensitivity training for management and employees.  Dkt. 1.  The defendants note that the plaintiff did not attend this training.  Dkt. 36, 39, & 41.

The defendants contend that LSC terminated only two of the nine employees that signed the complaint letter, and that LSC terminated those employees for legitimate reasons unrelated to the complaint letter.  Dkt. 36, 39, & 41.  The defendants assert that Mr. Bautista was terminated

for walking off of the job, and the other employee was terminated for a drug and alcohol violation. *Id.* Both employees later returned to work through the grievance process. *Id.*

*Locker Cutting and "Marking Off" Sick*

In February 2004, LSC posted a notice for employees that asked employees to claim only one locker and to place their names on their lockers by March 1, 2004, or their locks would be cut off and the contents disposed. *Id.* The plaintiff contends that similar messages were posted in the past and LSC had not followed through on the notice. *Id.* The plaintiff contends that he placed his name and belongings in one locker and left his name on a second locker so that he could use it if LSC did not follow through on the notice. *Id.* On March 5, 2004, the plaintiff arrived at work and contends that he did not feel well and had a headache. *Id.* Upon arrival, the plaintiff saw that the lock had been cut off his full locker and his belongings were in or near the trash. Dkt. 1; Dkt. 36, 39, & 41. The plaintiff contends that no other employees' lockers had been emptied. Dkt. 1. The plaintiff contends that seeing his belongs in or near the trash upset him and worsened his headache. *Id.* The defendants contend that the plaintiff did not have a headache and that he was angered by LSC following through on the notice. Dkt. 36, 39, & 41.

The plaintiff contends that his headache prevented him from working, and that he notified his yardmaster/supervisor on duty that "he felt ill and unsafe to do his job so he was 'marking off' sick." Dkt. 1. The yardmaster called another worker to substitute for the plaintiff and the plaintiff spoke to another employee and confirmed that the substitute would take the plaintiff's place. "Marking off" sick was permitted under company practices and the plaintiff contends that he followed company procedures for "marking off" sick. Dkt. 1.

The defendants contend that the plaintiff feigned his headache and that he "threw a temper tantrum and walked off the job" because his supervisor had cleared his locker. Dkt. 36, 39, & 41. The defendants dispute the plaintiff's statement of his actions in "marking off" sick and they contend that the defendant did not follow proper company procedure for "marking off" sick. *Id.*

When the plaintiff returned to work about two days later, Longview's General Manager, J.D. Wright, informed the plaintiff that he was suspended for violating policy and procedures when he "marked off" sick. Dkt. 36, 39, & 41; Dkt. 47. The plaintiff's employment was subsequently terminated by the defendants for an alleged violation of policy. *Id.* He remained unemployed for about 12 months. *Id.* He contends that as a result of his unemployment he suffered financial losses in the form of loss of compensation, credit damage, penalties and interest charged on his automobile loan payments, forced sale of personal belongings, and out-of-pocket medical expenses as a result of losing insurance coverage through his employer. Dkt. 1. The plaintiff was restored to his position through the union grievance process under the union's collective bargaining agreement. *Id.* When the plaintiff's employment was restored he was awarded partial back pay. *Id.*

The plaintiff claims that he should be owed all of his lost compensation and other damages. Dkt 1. The defendants contend that these damages are not appropriate because they did not discriminate or retaliate against the plaintiff, because LSC offered to restore the plaintiff's employment at a date much earlier than the plaintiff accepted, and because a neutral arbitrator determined that the adverse employment actions were appropriate. Dkt. 36, 39, & 41

*Job Performance*

During the plaintiff's employment he was required to take an assessment examination and failed that examination several times. The plaintiff argues that other employees were given more relaxed time constraints to complete the examination, were allowed to take the examination in less distracting environments, and were given more attempts to pass the examination. Dkt. 47. The plaintiff also contends that the defendants treated him differently than other employees by punishing him more harshly when he committed safety violations. Id. The defendants argue that they gave the plaintiff more assistance than normal to help him pass his examination and that they punished his safety violations according to company policy. Dkt. 36, 39 & 41.

<u>MOTIONS FOR SUMMARY JUDGMENT</u>

On March 16, 2010, Union Pacific filed Defendant Union Pacific's Motion for Summary Judgment (Dkt. 36).  Union Pacific contends that it cannot be liable to the plaintiff because it "neither employed Bautista nor could be considered his 'joint employer.'"  Dkt. 36.  Union Pacific further argues that the undisputed material facts prove that no discrimination or retaliation occurred.  *Id.*  On the same date, BNSF filed BNSF Railway Company's Motion for Summary Judgment (Dkt. 39), and made the same arguments for summary judgment as Union Pacific.

Also on March 16, 2010, LSC filed Longview Switching Company's Motion for Summary Judgment (Dkt. 41).  LSC argues that based upon the plaintiff's own undisputed testimony LSC did not discriminate or retaliate against him.  LSC further argues that "[t]o the contrary, [the plaintiff's] boss treated him far better than was required."  Dkt. 41.

On April 12, 2010, the plaintiff filed Plaintiff's Consolidated Response to Defendants' Motions for Summary Judgment (Dkt. 47).  The plaintiff argues that the defendants cannot win summary judgment because there are disputed facts in evidence as to whether the plaintiff was ill and therefore was allowed to "mark off" under the company policy. Dkt. 47.  The plaintiff further argues that he has raised a genuine issue of material fact as to whether the plaintiff's supervisor had a discriminatory motive for his alleged basis for terminating the plaintiff's employment.  *Id.*  Further, the plaintiff argues that BNSF and Union Pacific cannot be dismissed as defendants because BNSF and Union Pacific "acted as a single employer with LSC and were integrally involved in the management of Mr. Bautista's employment, discharge, and appeal of his discharge."  *Id.*

On April 16, 2010, Union Pacific filed Defendant Union Pacific's Reply to Plaintiff's Response to Motion for Summary Judgment (Dkt. 49).  Union Pacific argues that (1) the plaintiff concedes his retaliation claim because he failed to allege it in his response (Dkt. 47), (2) the plaintiff's joint employer theory fails, (3) and the plaintiff failed to name Union Pacific in his EEOC claim and the exceptions for bringing claims against parties not names in EEOC claims do not apply, and (4) the plaintiff has failed to produce specific, admissible evidence to meet his initial burden of establishing a prima facie case.  Dkt. 49.

On April 16, 2010, BNSF and LSC filed BNSF Railway Company and Longview Switching Company's Consolidated Reply on Motion for Summary Judgment (Dkt. 50).  BNSF and LSC argue that (1) the plaintiff concedes his retaliation claim because he failed to allege it in his response, (2) the plaintiff's joint employer theory fails, and (3) the plaintiff has failed to produce specific, admissible evidence to meet his initial burden of establishing a prima facie case.  Dkt. 50.

<u>DISCUSSION</u>

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply ҁsome metaphysical doubt.ҁ).  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial (e.g., a preponderance of the evidence in most civil cases).  *Anderson,* 477 U.S. at 254; *T.W. Elect. Service Inc.,* 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it

will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.,* 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888-89 (1990).

*1. Plaintiff's Claim of Discrimination*

The defendants contend that LSC had a legitimate, nondiscriminatory reason for terminating the plaintiff's employed and then restoring him with only partial back pay. Dkt. 36, 39, & 41. Plaintiff contends that he was terminated on the basis of race and ethnic origin, and that the reason given for his termination was a pretext for discrimination. Dkt. 47.

In order to prevail on a Title VII claim of discrimination, a plaintiff must first establish a prima facie case of discrimination consisting of the following elements: (1) plaintiff belongs to a protected class; (2) he was performing his job according to the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) other employees with qualifications similar to his own were treated more favorably. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Vasquez v. County of Los Angeles,* 307 F.3d 884, n. 5 (9th Cir. 2002). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment decisions. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802. Once the defendant satisfies this burden, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for a discriminatory motive. *Id.* at 804.

A plaintiff may prove pretext by either direct or circumstantial evidence. *Dominguez-Curry v. Nevada Transp. Dept.,* 424 F.3d 1027, 1038-39 (9th Cir. 2005). Direct evidence is evidence, which, if believed, proves the fact of discriminatory animus without inference or presumption. *Id.* Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer. *Id.* If a plaintiff has only circumstantial evidence, that evidence must be "specific" and "substantial" evidence of pretext to survive summary judgment. *Id.*

In Washington, the state courts apply the same burden-shifting scheme to cases under RCW 49.60 as the federal courts do to Title VII cases. *Hill v. BCTE Income Fund-I,* 144 Wn.2d 172, 180-81 (2001) (adopting Title VII analysis from *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000)).

Here, the parties do not dispute that the plaintiff is a member of a protected class, and that he suffered adverse employment action when he was suspended, terminated, and then restored with only partial back-pay. The plaintiff has presented a prima facie case that he was performing his job according to the employer's legitimate expectations by asserting that he had a relatively positive employment record, which was comparable to other valued employees, and that he followed company practice for "marking off" sick. The plaintiff also has presented a prima facie case that other employees with similar qualifications were treated more favorably by asserting that no other employees had their lockers cut and that no other locomotive engineers had been fired for "marking off" sick according to company policy.

The burden then shifts to the defendants, who have met their burden to articulate a legitimate, nondiscriminatory reason for the adverse employment action against the plaintiff. The defendants have articulated that they terminated the plaintiff because he failed to follow company procedure in "marking off" sick under the guise of a headache; because he failed to pass assessment examinations required to keep his position; and because he had committed several safety violations.

Because the defendants have satisfied their burden, the plaintiff must raise an issue of fact that the defendants' alleged reason for the adverse employment decision was a pretext for their discriminatory motive. The plaintiff contends that the defendants alleged reasons for terminating him were a pretext for their discriminatory motive because other employees, who were not Latino, were not terminated for "marking off" sick; were offered greater assistance, or were faced with fewer distractions, when taking assessment examinations; and were not terminated for similar, inevitable safety violations. Therefore, the plaintiff has raised a genuine issue of material fact as to whether he was terminated on the basis of race or ethnic origin and whether the reasons

given for his termination were pretext for discrimination.  Accordingly, the defendants' motions for summary judgment of the plaintiff's discrimination claim should be denied.

### 2.  Plaintiff's Claim of Retaliation

The plaintiff alleges that he was retaliated against for signing the complaint letter in January 2003 that complained about a co-worker's racist and sexist comments. Dkt. 1.  In their motions for summary judgment, the defendants contend that the plaintiff has failed to show that the adverse employment action he suffered was in retaliation for that complaint letter, which was delivered to corporate officers 14 months before the employment action was taken.  Dkt. 36, 39, & 41.  In their reply motions, the defendants also contend that the plaintiff concedes his retaliation claim because he failed to allege it in his response motion. Dkt. 49 & 50.  The plaintiff does not directly address his retaliation claim in his consolidated response motion, but the plaintiff did recite the facts in that motion that he that he previously offered in support of his retaliation claim in his complaint.  Therefore, the court should not consider the plaintiff to have conceded his retaliation claim.

To establish a retaliation claim under Title VII, a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two. *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (*citing Payne v. Norwest Corp.,* 113 F.3d 1079 (9th Cir. 1997)). At that point, the burden of production shifts to the employer to present legitimate reasons for the adverse employment action.  Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext.  Only then does the case proceed beyond the summary judgment stage.  *Id.*

To establish causation a plaintiff must show by a preponderance of the evidence that engaging in a protected activity was one of the reasons for his termination and that but for such activity he would not have been fired.  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (2002).  In some cases causation can be inferred from timing alone where an adverse employment action "follows on the heels of protected activity."  *Id.* (*citing Passantino v. Johnson & Johnson*

*Consumer Prods. Inc.*, 212 F.3d 493, 507 (9th Cir. 2000); *see e.g. Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that sufficient evidence of causation existed where adverse employment action occurred less than three months after the protected activity); *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 731-32 (9th Cir. 1986) (concluding that there was adequate evidence of a causal link where the retaliatory action occurred less than two months after the protected activity).  Conversely, in some cases a long lapse in time between the protected activity and an adverse employment action will not give rise to causation absent other evidence. *Villiarimo*, 281 F.3d at 1065.

The parties do not dispute that the plaintiff's complaint letter was a protected activity. And, as discussed above, the parties do not dispute that the plaintiff has suffered an adverse employment action.  However, the parties do dispute whether there was a causal link between the complaint and the plaintiff's adverse employment action; the defendants argue that the 14 month period between when the complaint was made and when the employment action was taken "alone destroys the causal link." Dkt. 36, 39, & 41.  Although 14 months passed before the employment action was taken, the plaintiff has asserted other possible retaliation actions during that time period, including harsher punishments for workplace violations, less assistances with assessment examinations, and general racist remarks.  Therefore, the plaintiff has raised genuine issues of material fact as to whether the defendants retaliated against him.  Accordingly, the defendants' motions for summary judgment of the plaintiff's retaliation claim should be denied.

*3.  Plaintiff's Claims against Joint Employers*

The defendants contend that the plaintiff and all of his co-workers were solely employees of LSC. Dkt. 36, 39, 41.  The defendants contend that BNSF and Union Pacific are customers of LSC because BNSF and Union Pacific hire LSC crews to "pick up empty or re-loaded cares, return them to the switching yard, assemble new trains, and the mainline railroads pick up the newly built trains for other destinations, to start the process all over again." Dkt. 41.

The plaintiff contends that both BNSF and Union Pacific acted as a single employer with LSC and were "integrally involved in the management of Mr. Bautista's employment, discharge,

and appeal of his discharge," and therefore should not be dismissed from this case.  Dkt. 47.  The plaintiff provides many assertions to support this argument, including that "BNSF handled virtually all personnel matters related to his employment, including hiring, training, testing, and paying him.  U[nion] P[acific] labor relations personnel were thoroughly involved in all matters related to Mr. Bautista's discharge, including Roger Spjut's recommendations to fire him and Al Hallber's signing letters stating the initial decision to deny his appeal, negotiations to his reinstatement, and the ultimate decision to reinstate him."  Dkt. 47.

A entity that does not directly employ the plaintiff will still have liability if it is deemed a "joint employer."  Liability as an indirect employer requires that the employer "have some peculiar control over the employee's relationship with the direct employer."  *EEOC V. Pacific Maritime Assn.*, 351 F.3d 1270, 1275 (9th Cir. 2003).  An indirect employer will have such control when it has the right to hire, supervise, assign tasks to, and fire employees.  *Id.*

Here, the plaintiff has alleged sufficient facts regarding BNSF and Union Pacific's involvement in his termination to raise a genuine issue of material fact as to whether BNSF and Union Pacific can be liable as joint employers.  Accordingly, the plaintiff's claims against BNSF and Union Pacific should not be dismissed.

Union Pacific argues that even if it is a joint employer, the plaintiff cannot bring his claim against it because the plaintiff did not name Union Pacific in his EEOC charge and therefore has not exhausted his administrative remedies against Union Pacific.  Dkt. 49.

Parties not named in the administrative charge may still be subject to a Title VII suit if they "were involved in the acts giving rise to the (administrative agency) claims," if they should have been able to anticipate being named in the suit, if the respondent named in the EEOC charge is a principal or agent of the unnamed party, if they are "substantially identical parties," if the administrative agency could have inferred that the unnamed party violated Title VII, or if the unnamed party participated in the administrative agency proceedings.  *Sosa v. Hiraoka*, 920 F.2d 1451, 1458-59 (9th Cir. 1990).

Here, the plaintiff has asserted many facts about the interrelationship between BNSF, Union Pacific, and LSC that raise genuine issues of material facts as to whether the plaintiff may bring his claim against Union Pacific, who was unnamed in the plaintiff's EEOC charge. Accordingly, the plaintiff's claims against Union Pacific should not be dismissed.

Accordingly, it is hereby **ORDERED** that the (1) Defendant BNSF Railway Company's Motion for Summary Judgment (Dkt. 39), (2) Defendant Union Pacific Railroad Company's Motion for Summary Judgment (Dkt. 36), and (3) Defendant Longview Switching Company's Motion for Summary Judgment (Dkt. 41) are **DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 10th day of May, 2010.

ROBERT J. BRYAN
United States District Judge

ORDER - 12